Coös,
June 26, 1936.

SELMA STONE LABONTÉ & a.

*v.*

ST. PAUL FIRE & MARINE INSURANCE COMPANY & a.

*Irving A. Hinkley,* for the plaintiffs.

*Thorp & Branch* (*Mr. Branch* orally), for the St. Paul company.

*Warren, Wilson, McLaughlin & Bingham,* for the Phoenix company.

PAGE, J. The findings and rulings unexcepted to establish the liability of the St. Paul company to pay to the mortgagees the sums of $848.40 and $636.50 respectively. They also establish the liability of the Phoenix company to pay Mrs. Labonté $4,000 unless deductions are to be made on account of the liability of the St. Paul company.

The St. Paul company asserts that it has a right to be subrogated to the claims of the mortgagees upon the notes and mortgages given by Mrs. Labonté. The case states that the company seasonably requested the court to rule in accordance with this contention. We therefore assume that the issue of subrogation was properly raised and that the parties were heard or had full opportunity for hearing upon the issue. If the St. Paul company had the right claimed, it might, upon payment to the mortgagees of their interests, take assignments from them, sue Mrs. Labonté on the notes and summon the Phoenix company as trustee. If such are its rights, the court, in order to avoid circuity of action, should have decreed that the Phoenix company pay the losses of the mortgagees directly, and pay to the receiver the sum of $2515.10. *Smith* v. *Bank,* 69 N. H. 254.

The St. Paul policy having been cancelled as to the mortgagor's

interest and remaining effective as to the interests of the mortgagees, must be treated as a contract with the mortgagees separately. *Fidelity-Phenix &c. Co.* v. *Brennan*, 85 N. H. 291, 294. If the mortgagees had obtained this policy themselves, even without a clause giving the insurer the right of conventional subrogation, it is probable that legal subrogation would have resulted, unless it appeared that the mortgagees effected the insurance as agents for and on account of the owner. If the sole fact that the owner paid the premium for a policy taken out by the mortgagees would result in a construction that the contract was intended to benefit the owner, a contrary construction would be required if the policy contained a provision showing that it was not intended that the owner should benefit from the insurance. Joyce, Insurance (2d *ed.*), s. 3563.

This case can hardly be distinguished in principle. Though the owner originally took out the policy and paid the premium, the contract specifically provided that if the insurer became liable upon it to the mortgagees, but not to the owner, payment of the full amount of the mortgages should entitle the company to subrogation. By her own act Mrs. Labonté released the St. Paul company from liability to her. Upon a construction of the contract as it stood after the owner ceased to be a party to it, the intention must be found to be that expressed—that the owner should not benefit from the insurance.

If the policy, instead of being cancelled as to the owner's interest, had been avoided by her default, the insurer would have been subrogated. *Badger* v. *Platts*, 68 N. H. 222; *Fidelity-Phenix &c. Co.* v. *Brennan*, *supra*. Nowhere have we found a decided case in which the right of subrogation was claimed where non-liability to the owner depended on his voluntary cancellation of the policy as to his interest. However, the reasonable test of the right to subrogation, as we gather from the contract, is the insurer's lack of liability to the owner, not the manner in which non-liability arose. The ruling sought by the St. Paul company should have been made.

*Exception sustained.*

BRANCH J., did not sit: the others concurred.