854 F.2d 100
 MERCHANTS NATIONAL BANK, VICKSBURG, MISSISSIPPI, Plaintiff,
v.
SOUTHEASTERN FIRE INSURANCE CO., INC. and American Security,
Insurance Co., Inc., Defendants-Appellees,
v.
John N. BARLOW and Edna Earl Barlow, Appellants.
John N. BARLOW, Plaintiff-Appellant,
v.
AMERICAN SECURITY INSURANCE CO., and Southeastern Fire
Insurance Co., Inc., Defendants-Third Party
Defendants-Appellees,
v.
Edna Earl BARLOW, Defendant-Third Party Plaintiff-Appellant.
VICKSBURG SMALL BUSINESS INVESTMENT CO., Plaintiff,
v.
AMERICAN SECURITY INSURANCE CO., INC., Defendant-Appellee,
v.
John N. BARLOW and Edna Earl Barlow, Appellants.
 No. 87-4518.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 6, 1988.
Rehearing Denied Oct. 3, 1988.
 
 Landman Teller, Jr., Kenneth B. Rector, Teller, Chaney & Rector, Vicksburg, Miss., for appellants.
 Walker W. Jones, III, Ross F. Bass, Jr., Phelps, Dunbar, Marks, Claverie & Sims, Jackson, Miss., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before THORNBERRY, WILLIAMS and SMITH, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 In this diversity suit, John N. Barlow appeals from a judgment barring his recovery under a homeowner's insurance policy issued by appellee American Security Insurance Co. ("American"). His mother, Edna Barlow, joins in the appeal as a mortgagee claiming a right to recover under the policy. John Barlow also appeals the dismissal of his claim against appellee Southeastern Fire Insurance Company, Inc., ("Southeastern"), for wrongful foreclosure and sale of his property. After consideration of all issues presented, we affirm the district court.
 
 
 2
 On December 14, 1981, John Barlow purchased a $245,000.00 casualty insurance policy from American Security Insurance Company ("American"), covering his house and its contents. At the time of the issuance of the policy, Barlow had been indicted for forgery[1] and was over $230,000.00 in debt, with five mortgages on his property. The Barlow home burned completely on March 26, 1982. Barlow filed a proof of loss, but American refused to pay on the policy. American also refused to pay those holding mortgages on Barlow's property.[2]
 
 
 3
 After several months passed, Barlow sued American, and was eventually joined in the suit by four mortgagees.[3] Two of the mortgagees, Merchants National Bank, Vicksburg ("MNB") and Vicksburg Small Business Investment Company ("VSBIC") had filed individual suits against American and Southeastern. Southeastern had taken over Barlow's policy from American.[4] These actions were combined with Barlow's suit and removed to federal district court in Mississippi. Barlow's mother Edna Barlow and another mortgagee, Bossier Bank & Trust Co. ("Bossier") cross-claimed against American for failing to pay on John Barlow's policy. All four mortgagees counterclaimed against Barlow for the amounts due on their mortgages.
 
 
 4
 Following a jury trial, the district court directed verdicts against Barlow and mortgagees Bossier and Edna Barlow. The jury returned a verdict for MNB and VSBIC against American based on the mortgage clause contained in the homeowner's policy. All mortgagees obtained judgments against John Barlow on their notes.
 
 
 5
 Barlow and mortgagees Bossier and Edna Barlow, appealed the directed verdict. MNB appealed the denial of an instruction on punitive damages. This Court reversed the directed verdicts against John Barlow, Edna Barlow, and Bossier, and held that MNB was entitled to an instruction on punitive damages. Merchants National Bank v. Southeastern Fire Insurance Co., 751 F.2d 771 (5th Cir.1985) ("Merchants I "). The case was remanded for a new trial.
 
 
 6
 The insurance companies then settled with Bossier and MNB, so all mortgagees except Edna Barlow were paid. Thus, the second trial involved only the claims of John and Edna Barlow. John Barlow added a claim of wrongful foreclosure against defendant insurance company Southeastern. (MNB had transferred its note to Southeastern as part of the settlement agreement, and Southeastern foreclosed on Barlow's property.) The district court directed a verdict for Southeastern on the issue of wrongful foreclosure, and directed a verdict against Edna Barlow on the issue of punitive damages. The issue of liability of the insurance companies to Barlow was submitted to a jury. The jury found no liability. Edna Barlow appeals the directed verdict on punitive damages, and reserves her right to recover if John Barlow recovers. John Barlow appeals the jury verdict against his recovery on the policy, as well as the directed verdict on wrongful foreclosure.
 
 I. Concealment
 
 7
 The jury found by special interrogatory that Barlow could not recover under his policy with American. No specific factual determinations accompany the verdict or judgment. The record discloses, however, that American relied exclusively on the affirmative defense of concealment in the procurement of the policy. Barlow attacks this defense by claiming: (1) the issue of concealment was waived by American's failure to raise it in the first trial, (2) the law of the case in Merchants I bars presentation of evidence of concealment, and (3) there is insufficient evidence of concealment to support the verdict. Barlow also claims that the district court improperly instructed the jury on the requirements of proving concealment. We address these issues in turn.
 
 A. Waiver
 
 8
 Barlow claims American should not have been allowed to rely on the defense of concealment in the procurement of the policy because the precise issue was not raised in the first trial. Although concealment was certainly an issue in the first trial and appeal, the focus at that time was upon concealment occurring after the issuance of the policy. See Merchants I, supra, 751 F.2d at 775-79. The second trial centered around the issue of concealment prior to issuance of the policy. The issue, stated in the pretrial order for the second trial, was phrased as follows: "whether Barlow misrepresented the amount and number of mortgages on his property when he applied for issuance of the homeowner's policy." Barlow never objected in the district court that this issue had been waived by American's failure to raise it at the first trial. He claims waiver only now on appeal.
 
 
 9
 We follow the reasoning in Trinity Carton Co. v. Falstaff Brewing Corp., 767 F.2d 184, 192 n. 13 (5th Cir.1985), which states: "The pretrial order controls the course of the trial ... objections thereto are required or else a litigant is barred from raising the matter on appeal." Because the issue of concealment in the procurement of the policy was contained in the pretrial order and was not objected to at trial on grounds of waiver, and because of the substantial overlap between the issues of concealment in procurement versus concealment after issuance, we find that American did not waive its defense.
 
 B. The Law of the Case
 
 10
 Barlow contends that this Court's opinion in Merchants I bars all evidence of concealment. He relies on the following language in Merchants I: "American had actual knowledge of Barlow's financial problems and criminal activities at the time of or shortly after the issuance of the policy, yet it denied payment because of the non-disclosure of that information." Supra, 751 F.2d at 777.
 
 
 11
 The quotation is taken out of context. It is dicta from the portion of the first appeal which dealt with allegations of concealment by the mortgagees. We held that no material change in Barlow's condition required the mortgagees to notify American, and that an instruction for punitive damages should have been given. Merchants I, supra, at 777. By contrast, the second trial centered mainly upon whether Barlow concealed information in order to obtain the insurance policy in the first place. The issue was not whether American knew, "at the time of or shortly after the issuance of the policy," that Barlow was having "financial problems," but more accurately, whether Barlow misrepresented the amount of his indebtedness. We thus find that evidence of concealment was not precluded by Merchants I.
 
 C. Sufficiency of the evidence
 
 12
 American asserts the established law that because Barlow did not move for a directed verdict, he is foreclosed from attacking the sufficiency of evidence on appeal. Dunn v. Sears, Roebuck & Co., 639 F.2d 1171, 1175 (5th Cir.1981). We recognize the application of that rule. To avoid any feeling that the case was lost on a technicality, however, we briefly consider the merits and conclude that the evidence is sufficient to support the verdict.[5]
 
 
 13
 Under Mississippi law, an insurance company seeking to cancel coverage based on the concealment clause of the policy must show that the insured knowingly and willfully made false, material statements. Watkins v. Continental Insurance Co., 690 F.2d 449, 451 (5th Cir.1982). American presented evidence that Barlow did not reveal the indictment against him for forgery, the total number of mortgages on his house, or the total amount of indebtedness on his mortgages. An underwriter for American testified that if she had known any of this information, she would not have approved issuance of the policy.
 
 
 14
 Although the testimony is undisputed that American's local agent never inquired into Barlow's criminal matters, nor asked the exact number of mortgages on the house, we find evidence in the record from which the jury could infer that Barlow misrepresented the amount of indebtedness on the property. American introduced a memorandum written to underwriter Judy Bowen, from agent Wayne Latner. Latner was a partner in the Vicksburg Insurance Center at the time Barlow applied for coverage. The note reads:
 
 Judy:
 
 15
 This house was built in stages--which is the reason for the 4 lienholders. There is now only $100,000.00 total indebtedness on this house.
 
 
 16
 [signature]
 
 
 17
 The actual indebtedness on the house was over $200,000, not $100,000. Latner testified that he obtained the erroneous information from agent Charles Johnson, who had obtained all the underwriting information from Barlow.
 
 
 18
 A jury may draw reasonable inferences from the evidence, and inferences can sufficiently support a verdict. Pregeant v. Pan American World Airways, Inc., 762 F.2d 1245 (5th Cir.1985). Whether or not we would draw the same inference against Barlow is unimportant: "An appellate court is not free to reweigh the evidence or to re-evaluate credibility of witnesses or to substitute for the district court's reasonable factual inferences from the evidence other inferences that the reviewing court may regard as more reasonable." Glass v. Petro-Tex Chemical Corp., 757 F.2d 1554 (5th Cir.1985); Boeing Company v. Shipman, 411 F.2d 365, 375 (5th Cir.1969) (en banc). We accept the jury's conclusion that Barlow misrepresented his indebtedness on the property.
 
 D. Jury Instruction
 
 19
 Barlow claims the district court erred in instructing the jury on the defense of concealment. He claims the charge shifted the burden of proof to the insured by suggesting a duty to volunteer material information. Our review of the charge as a whole, however, reveals that it did not make such a requirement. The portion of which Barlow complains, reads as follows:
 
 
 20
 [T]he applicant is required to reveal fully and truthfully all information which a reasonable applicant under the same or similar circumstances would know would be material to the company's decision to accept the risk. The applicant is not required to reveal information which is not directly asked of him, and which a reasonable applicant under the same or similar circumstances would not know was material to the company's determination to accept the risk ... if an applicant for the insurance induces the insurer to accept his application and issue the policy through misrepresentation and concealment, the policy is void.
 
 
 21
 As we read it, this charge states that an insured must reveal unsolicited information only if he reasonably is expected to know it is information to which the insurance company is entitled. This requirement may or may not be wholly accurate under Mississippi law. More important, however, is the fact that the judge clearly instructed the jury on American's burden of proof, and stated that Barlow must have concealed or misrepresented information, knowingly and willfully, in order for the policy to be void. There was no shifting of the burden of proof. The charge satisfies the guidelines set out by this Court. It need not be perfect, but in general must instruct correctly. Borel v. Fibreboard, 493 F.2d 1076 (5th Cir.1973). We find no reversible error.
 
 II. Wrongful Foreclosure
 
 22
 American and Southeastern settled with mortgagee MNB following the first trial. Pursuant to the statutory mortgage clause contained in the insurance policy, MNB assigned to Southeastern all of its rights against Barlow. Miss.Code Ann. Sec. 83-13-9 (1972). At the time of the transfer, MNB had already begun to foreclose on Barlow's property. Southeastern then completed foreclosure and sale of the property to a third party. At the second trial, Barlow counterclaimed against Southeastern for wrongful foreclosure, claiming it had no right to foreclose or sell the property before liability was determined. In other words, Barlow claims Southeastern should not have sold his land at a time when it may have owed him money. The district judge directed a verdict against Barlow on his claim of wrongful foreclosure.
 
 
 23
 An insurer who pays a mortgagee for loss under a fire insurance policy while denying liability to the mortgagor or owner is subrogated to all the rights of the mortgagee and is entitled to an assignment and transfer of the mortgage. Tolar v. Barkers Trust Savings & Loan Ass'n., 363 So.2d 732 (Miss.1978). No Mississippi case has been found, however, that has applied the rule in Tolar to a situation such as this where the insured's property is foreclosed by the insurer prior to appeal and sold while a second trial is pending on liability.
 
 
 24
 Barlow claims that earlier Mississippi case law bars the right to subrogation by an insurer prior to judicial determination on liability. But the cases he cites, Home Insurance Co. v. Northington, l98 Miss. 650, 23 So.2d 537 (1945); Hartford Fire Insurance Company v. Green, l48 Miss. 627, 114 So. 865 (1927), involve insurance policies found to be valid. Further, a judicial determination on liability was rendered in the instant case, but was reversed following transfer of the mortgage.
 
 
 25
 Lacking precise guidance on this issue by the Mississippi Supreme Court, we give great weight to the decision of the district judge. Avery v. Maremont Corp., 628 F.2d 441, 446 (5th Cir.1980) ("where the state law is uncertain, we are hesitant to second guess the federal district court judge.") Moreover, Barlow's claim of wrongful foreclosure, premised on his own right to recover against Southeastern, is substantially undermined by our affirmance of the verdict for American and Southeastern on the issue of liability. Even if he could establish wrongful foreclosure at the time it occurred, no damage could be shown since the right to foreclose has been established. We thus find that the district court did not err in directing a verdict against Barlow on the issue of wrongful foreclosure.
 
 III. Mistrial
 
 26
 Barlow claims the district court should have granted a mistrial because of misconduct by defense counsel. Barlow complains specifically of references made during trial to the falsification of student records at the commercial school he formerly owned.[6] After reviewing the entire record, we do not see that these references, two by counsel and one by a witness, resulted in prejudice. The district judge sustained each objection to the mention of falsifying records, and instructed the jury to disregard the information. The matter was never developed. We find no misconduct which would warrant a mistrial. See Pierce v. Ramsey Winch Co., 753 F.2d 416, 433 (5th Cir.1985); Crown Colony Dist. v. United States Fire Insurance Co., 510 F.2d 544, 545 (5th Cir.1975).
 
 IV. Damages
 
 27
 The Barlows raise several claims relating to punitive damages, and one with respect to calculating actual damages. Because neither Edna or John Barlow is entitled to actual damages under the policy, there clearly is no basis to award punitive damages.[7]
 
 V. Conclusion
 
 28
 We affirm the verdict in favor of American, against recovery by John Barlow and Edna Barlow. We find that the district court did not err in directing a verdict against John Barlow on the issue of wrongful foreclosure, nor did it err in refusing to grant a mistrial based on misconduct. We find no right to punitive damages. The decision of the district court is
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Barlow later was convicted for forging his ex-mother-in-law's signature in order to obtain one of the mortgages on his house
 
 
 [2]
 Four mortgagees were named as beneficiaries under the policy. Mortgagee Edna Barlow was not named in the policy
 
 
 [3]
 The claim of the fifth mortgagee, Margaret C. Weems, Barlow's ex-mother-in-law, was handled in a separate state court action. Weems v. American Security Insurance Co., 450 So.2d 431 (Miss.1984), which determined that she was entitled to recover against American based on the statutory mortgage clause contained in the policy
 
 
 [4]
 Throughout this opinion, we will refer to the defendant insurance companies, together, simply as "American."
 
 
 [5]
 Although Barlow neglected to move for directed verdict, he did submit a proposed general jury instruction requesting a directed verdict in his favor. The proposed instruction made no reference to insufficiency of the evidence. Barlow argues that his request satisfies the requirements of Fed.R.Civ.P. 50, for purposes of challenging the sufficiency of the evidence. This Court has never considered the precise issue, but there is no authority that a requested instruction which does not state specific grounds can preserve review of the sufficiency of the evidence. A requested instruction which does not specify grounds of insufficient evidence, deprives the opposition of an opportunity to cure its case, and defeats the purpose behind the "specific grounds" requirement of Rule 50. Cf. Thezan v. Maritime Overseas Corp., 708 F.2d 175 (5th Cir.1983) (grounds for motion for directed verdict less than precise but sufficient to make trial court aware of position and preserve issue for appeal); Quinn v. Southwest Wood Products, Inc., 597 F.2d 1018, 1024-26 (5th Cir.1979) ("There is much to be said for the view that whenever a party, at the conclusion of the evidence and before the jury has begun to deliberate, clearly points out a claimed evidentiary deficiency to the court and counsel, ... on the record in an unambiguous formal motion for relief, however denominated, this should suffice."). See also Texoma AG-Products v. Hartford Accident & Indemnity Co., 755 F.2d 445, 448 (5th Cir.1985) (party preserved error by objecting to jury charge on grounds of sufficiency of the evidence)
 
 
 [6]
 Barlow was investigated for altering student records in order to obtain federal funds
 
 
 [7]
 We reject Edna Barlow's claim that, as a mortgagee, she was entitled to a separate instruction on punitive damages. The case she relies upon, Nationwide Mutual Fire Insurance Co. v. Dungan, 818 F.2d 1239 (5th Cir.1987), simply states that an unnamed mortgagee has an equitable lien on the proceeds of the policy. Nationwide does not stand for the novel proposition that an unnamed mortgagee may recover punitive damages independent of recovery by the insured